UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GREG SERBON, *et al.*, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:18-CV-427-JVB-JEM |
| ) | |
| CITY OF EAST CHICAGO, INDIANA, *et al.*, ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DE 17], filed on November 21, 2018, and on the State of Indiana's Motion to Remand [DE 31], filed on December 7, 2018. Defendants filed a joint response to both motions on December 31, 2018. Plaintiffs filed a reply on December 28, 2018, and Intervenor State of Indiana filed a reply on January 11, 2019. With the Court's leave, Defendants filed a sur-reply on April 9, 2019. Plaintiffs filed notices of supplemental authority on May 16, 2019, July 17, 2019, and October 9, 2019. Defendants filed a response to the first of these notices on May 24, 2019.

On April 14, 2020, the Court raised the issue of whether an intervenor's standing to bring a suit in federal court under Article III of the United States Constitution could make a case removable that, prior to intervention, was not removable due to lack of Article III standing. The Court invited supplements on this topic. Plaintiffs filed a supplement on April 28, 2020, in which Plaintiffs argued that such an intervention does not make a case removable. Defendants filed a supplement on April 30, 2020, in which they took the opposite position.

For the reasons stated below, the Court remands this case to state court due to this Court's lack of subject matter jurisdiction.

## BACKGROUND

### A. Procedural History

Plaintiffs initiated this case by filing a complaint in Lake County Superior Court on May 9, 2018. In the complaint, Plaintiffs bring an action under Indiana Code § 5-2-18.2-5 to compel Defendants to comply with Indiana's sanctuary city preemption law. Plaintiffs also bring federal constitutional challenges under the Supremacy, Equal Protection, and Due Process Clauses of the United States Constitution. Plaintiffs allege statutory standing to bring the action to compel and further allege standing to bring the constitutional challenges under Indiana's public standing doctrine. Plaintiffs do not allege Article III standing.

The State of Indiana filed a motion to intervene "for the purpose of defending the constitutionality of Indiana Code chapter 5-2-18.2 ('Ind. Chapter 18.2') and pursuing all other relief available under Ind. Chapter 18.2." (Notice Removal App'x 1, 431, ECF No. 1-2). The State clarified that it "neither takes a position nor advances any argument on Plaintiffs' claims that the East Chicago ordinance independently violates the U.S. Constitution. Rather, the State seeks to intervene for the sole purpose of addressing the Ordinance as it relates to Ind. Chapter 18.2." *Id.* at 434 n.2. The motion to intervene was granted in Lake County Superior Court on October 30, 2018.

In the Notice of Removal, filed on November 9, 2018, Defendants argue that the state law claims raise federal issues such that federal question subject matter jurisdiction exists under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005). Defendants further argue that, though Plaintiffs do not have standing to bring their claims in federal court, the State as an intervenor has Article III standing to bring Plaintiff's claims, and, therefore, the case became removable when the state court granted the State's motion to intervene.

**B. Plaintiffs' Claims**

Plaintiffs allege that the enactment of East Chicago Ordinances §§ 17-1101-3, -6, -9(c), and -10, violates Indiana Code §§ 5-2-18.2-3, -4, and -7 and contravene the Supremacy Clause, Equal Protection Clause, and Due Process Clause of the United States Constitution. The ordinances provide:

> **Section 3. Requesting information prohibited.**
> No agent or agency shall request information about or otherwise investigate or assist in the investigation of the citizenship or immigration status of any person unless such inquiry or investigation is required by an order issued by a court of competent jurisdiction. Notwithstanding this provision, the Corporation Counsel may investigate and inquire about citizenship or immigration status when relevant to potential or actual litigation or an administrative proceeding in which the City is or may be a party.
>
> **Section 6. Immigration enforcement actions – Federal responsibility.**
> No agency or agent shall stop, arrest, detain, or continue to detain a person after that person becomes eligible for release from custody or is free to leave an encounter with an agent or agency, based on any of the following:
>   1) an immigration detainer;
>   2) an administrative warrant (including but not limited to entered into the Federal Bureau of Investigation's National Crime Information Center database); or
>   3) any other basis that is based solely on the belief that the person is not present legally in the United States, or that the person has committed a civil immigration violation.
>   a. No agency or agent shall be permitted to accept requests by ICE or other agencies to support or assist in any capacity with immigration enforcement operations, including but not limited to requests to provide information on persons who may be the subject of immigration enforcement operations (except as may be required under section 11 of this ordinance), to establish traffic perimeters, or to otherwise be present to assist or support an operation. In the event an agent receives a request to support or assist in an immigration enforcement operation, he or she shall report the request to his or her supervisor, who shall decline the request and document the declination in an interoffice memorandum to the agency director through the chain of command.
>   b. No agency or agent shall enter into an agreement under Section 1357(g) of Title 8 of the United States Code or any other federal law that permits state or local governmental entities to enforce federal civil immigration laws.
>   c. Unless presented with a valid and properly issued criminal warrant, no agency or agent shall:

3

> 1. Permit ICE agents access to a person being detained by, or in the custody of, the agency or agent;
> 2. Transfer any person into ICE custody;
> 3. Permit ICE agents use of agency facilities, information (except as may be required under section 11 of this ordinance), or equipment, including any agency electronic databases, for investigative interviews or other investigative purpose or for purposes of executing an immigration enforcement operation; or
> 4. Expend the time of the agency or agent in responding to ICE inquiries or communicating with ICE regarding a person's custody status, release date, or contact information.
>
> **Section 9. Commitments.**
> . . .
> c) The City recognizes the arrest of an individual increases that individual's risk of deportation even in cases where the individual is found to be not guilty, creating a disproportionate impact from law enforcement operations. Therefore, for all individuals, the East Chicago Police Department will recognize and consider the extreme potential negative consequences of an arrest in exercising its discretion regarding whether to take such an action and will arrest an individual only after determining that less severe alternatives are unavailable or would be inadequate to effect a satisfactory resolution.
> . . .
>
> **Section 10. Information regarding citizenship or immigration status.**
> Nothing in this chapter prohibits any municipal agency from sending to, or receiving from, any local, state, federal agency, information regarding an individual's citizenship or immigration status. All municipal agents shall be instructed that federal law does not allow any such prohibition. "Information regarding an individual's citizenship or immigration status," for purposes of this section, means a statement of the individual's country of citizenship or a statement of the individual's immigration status.

The text of the pertinent Indiana Code sections is as follows.

> Sec. 3. A governmental body or a postsecondary educational institution may not enact or implement an ordinance, a resolution, a rule, or a policy that prohibits or in any way restricts another governmental body or employee of a postsecondary educational institution, including a law enforcement officer, a state or local official, or a state or local government employee, from taking the following actions with regard to information of the citizenship or immigration status, lawful or unlawful, of an individual:
>    (1) Communicating or cooperating with federal officials.
>    (2) Sending to or receiving information from the United States Department of Homeland Security.
>    (3) Maintaining information.

4

> (4) Exchanging information with another federal, state, or local government entity.
>
> Sec. 4. A governmental body or a postsecondary educational institution may not limit or restrict the enforcement of federal immigration laws to less than the full extent permitted by federal law.
>
> . . .
>
> Sec. 7. Every law enforcement agency (as defined in IC 5-2-17-2) shall provide each law enforcement officer with a written notice that the law enforcement officer has a duty to cooperate with state and federal agencies and officials on matters pertaining to enforcement of state and federal laws governing immigration.

Ind. Code. §§ 5-2-18.2-3, -4, -7.

## ANALYSIS

A state court civil action "of which the district courts of the United States have original jurisdiction[ ] may be removed by . . . the defendants[ ] to the district court of the United States." 28 U.S.C. § 1441(a). Because federal courts are courts of limited jurisdiction, the removal statute is to be narrowly construed, with all doubts resolved against permitting removal. *Ctr. for Wildlife Ethics, Inc. v. Clark*, 325 F. Supp. 3d 911, 914 (N.D. Ind. 2018).

Because Defendants removed this matter from state court to federal court, they bear the burden of showing that federal jurisdiction exists over this litigation. *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 824-25 (7th Cir. 2013). Thus, Defendants must "establish that all elements of jurisdiction—including Article III standing—existed at the time of removal." *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) (citations omitted).

### A. Standing

Article III standing requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).

5

The State of Indiana alleges an injury in fact (the enactment of ordinances in violation of state statutes), that is fairly traceable to Defendants' actions, and is likely to be addressed by receiving the requested relief: an injunction against the ordinances. Thus, the State of Indiana has Article III standing.

Plaintiffs, however, do not have Article III standing to bring their claims. The parties appear to agree on this point, and analysis of the issue shows them to be correct. Regarding an injury in fact, the most specific allegation found in the complaint is that Plaintiffs "are presently suffering irreparable harm to their public interests and rights, established by Chapter 18.2, public-standing doctrine, the Supremacy Clause, the Equal Protection Clause, and the Due Process Clause." (Compl. ¶ 75, ECF No. 8). However, "the generalized interest of all citizens in constitutional governance . . . is an inadequate basis on which [to find that Article III standing exists]." *Whitmore v. Arkansas*, 495 U.S. 149, 160 (1990) (citation omitted). Put more bluntly, the Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Id.* (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-83, 489-90, n. 26 (1982)). Thus, Plaintiffs have not alleged an injury that gives rise to Article III standing.

The Court *sua sponte* raised the issue of the effect of intervention on standing, and Plaintiffs and Defendants have each filed a brief on the topic. Plaintiffs do not allege Article III standing in their complaint, which was filed in state court. Defendants removed this action to federal court on the theory that the intervention of the State of Indiana as a plaintiff with Article III standing to bring the claims in Plaintiff's complaint makes this case removable to federal court.

On first blush, there are myriad cases both supporting and rejecting each position. On closer examination, however, many of these cases are readily differentiable. *See Roman Catholic Bishop of Monterey v. Cota*, 711 F. App'x 428, 429 (9th Cir. 2018) ("Because there was no ongoing 'proceeding' other than the motion to intervene, the United States effectively removed only the motion to intervene, not the prior action, no matter how the notice of removal was phrased."); *MB Fin., N.A. v. Stevens*, 678 F.3d 497, 499 (7th Cir. 2012) (making, in dicta, the less-that-definitive statement that "[*p*]*erhaps* a grant of that motion [to intervene] *could* have" created federal subject matter jurisdiction); *Vill. of Oakwood v. State Bank & Tr. Co.*, 481 F.3d 364, 368 (6th Cir. 2007) (finding intervention *after removal* does not cure defects in removal); *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001) (finding federal jurisdiction *without considering* the issue of whether intervention can create removability); *Perpetual Bldg. & Loan Ass'n v. Series Dirs. of Equitable Bldg. & Loan Ass'n, Series No. 52*, 217 F.2d 1, 5 (4th Cir. 1954) (finding that plaintiff was trying to litigate matters *already adjudicated* in a former action that determined the litigation was a matter for federal jurisdiction); *Vanderbilt Mortg. & Fin., Inc. v. Flores*, Civil Action No. C-09-312, 2010 WL 11596564, at *1 (S.D. Tex. Feb. 3, 2010) (finding that *personal jurisdiction* existed without analyzing the propriety of a third party defendant's removal of the case based on the federal claims of the intervenor); *Henderson v. S. States Police Benevolent Ass'n*, No. 1:02-CV-045, 2002 WL 32060139, at *7 (E.D. Tenn. Mar. 15, 2002) (considering, in dicta, a *hypothetical* case where an intervenor's claim is aligned with the plaintiff's claim); *Brixley v. Union Oil Co.*, 275 F. Supp. 290 (W.D. Ark. 1967) (considering removal based on an *amended complaint* filed after intervention was allowed); *see also ASARCO Inc. v. Kadish*, 490 U.S. 605, 617-24 (1989) (holding that a state

supreme court order caused an injury that gave the petitioners standing to bring their case before the *Supreme Court of the United States*).

In other cases, courts looked only at whether a notice of removal was timely filed without considering whether an intervenor's claims can make a non-removable case removable. *See Cobalt Int'l Energy, Inc. v. Alterra Am. Ins. Co.*, 788 F. App'x 254, 257 (5th Cir. 2019); *Engle v. R.J. Reynolds Tobacco Co.*, 122 F. Supp. 2d 1355, 1363 n.5 (S.D. Fla. 2000).

In yet other cases, the intervention added a party who opposed the plaintiff(s), or the plaintiff(s) sought removal after the intervention. *McKinney Econ. Dev. Corp. v. McKinney Shores Props. Inc.*, No. 4:09cv284, 2010 WL 3855553, at *2 (E.D. Tex. Aug. 27, 2010) *adopted over objections* 2010 WL 3835031 (E.D. Tex. Sept. 30, 2010); *U.S. Cavalry Store, Inc. v. Acton*, Civil Action No. 05-422-C, 2005 WL 8175150, at *2 (W.D. Ky. Sept 14, 2005); *Hill ex rel. Pleasant Green Enters. Inc. v. Maton*, 944 F. Supp. 695, 697 (N.D. Ill. 1996); *California v. Glendale Fed. Sav. & Loan Ass'n.*, 475 F. Supp. 728, 733 (C.D. Cal. 1979).

The court in *Hekmat v Kohler Co.*, No. CV 08-07015, 2009 WL 10673220, at *2 (C.D. Cal. Jan 8, 2009), found that the case was not removable until after intervention because the intervenor's claims met the amount in controversy requirement of diversity jurisdiction. However, this Court is reluctant to rely on an unpublished district court opinion from another circuit, especially as there is no explicit consideration of any difference between claims introduced into litigation by intervention versus claims introduced by an original plaintiff. Further, though Defendants cite cases from Indiana state courts indicating that intervenors should be treated as "original" parties, in context, those cases say intervenors should be so treated for the purpose of determining whether attorney fees under the Access to Public Records Act can be awarded against an intervenor and whether an intervenor's claim can proceed after the agreed dismissal of the

8

original claim. *See Shepherd Props. Co. v. Int'l Union of Painters & Allied Trades*, 972 N.E.2d 845, 851-52 (Ind. 2012); *Christin v. Durm*, 866 N.D. 2d 826, 829 (Ind. Ct. App. 2007). These cases are not clear statements of how intervenor-added claims affect removability.

It is also true that the Court of Appeals for the Sixth Circuit held in *Kelly v. Carr*, 691 F.2d 800, 806-07 (6th Cir. 1980), that a later intervention cured the improper removal of a case without federal jurisdiction, but the instant case is currently in a district court that is located within the Seventh Judicial Circuit, whose court of appeals "is proud to have a reputation as a jurisdictional hawk." *Lowrey v. Tilden*, 948 F.3d 759, 760 (7th Cir. 2020). The Court respectfully disagrees with the *Kelly* holding that an improper removal can be later cured. In any event, the intervention here occurred before removal, not after.

The Court's review of the cases above leads to no clear outcome. The Court appreciates the parties' efforts expended in briefing the issue. However, the case can be decided more clearly on the issue of whether a federal question exists. For the purpose of this Opinion and Order, therefore, the Court assumes, without deciding, that, when an intervenor joins a plaintiff's claims in state court and the intervenor—but not the plaintiff—has Article III standing to bring those claims, then there is Article III standing as required for removal to federal court.

Accordingly, the federal constitutional claims, which the State of Indiana did not join, must be remanded for lack of standing. *See* 28 U.S.C. § 1441(c)(2). The Court will proceed to consider whether it has jurisdiction over the state law claims.

### B. Federal Question

A case can be removed to federal court if it could have originally been brought in federal court. 28 U.S.C. § 1441(a). For federal question jurisdiction—the jurisdictional basis alleged by Defendants—the case must "aris[e] under the Constitution, laws, or treaties of the United States."

9

*Id.* at § 1331. In general, a civil action "arises under the law that creates the cause of action." *Praschak v. Kmart Corp.*, 922 F. Supp. 2d 710, 712 (N.D. Ill. 2013) (quoting *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)). Under *Grable*, however, federal question subject matter jurisdiction also exists over a state law claim if the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313. Only in rare cases does federal issue in a state claim permit removal. *Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1033 (7th Cir. 2014); *accord Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006) (describing the category of cases that fall under *Grable* as "special and small").

That a court may have to look to federal law in resolving a state law claim is insufficient to create federal question jurisdiction. In *Merrell Dow Pharmaceuticals Inc. v Thompson*, 478 U.S. 804 (1986), the Supreme Court determined that there is no federal jurisdiction created over a state law negligence claim merely because violation of a federal statute provides a rebuttable presumption or a proximate cause under state negligence law. *Id.* at 812. Even a case where the "central issue presented" turns on interpretation of a federal statute does not necessarily arise under federal law. *Id.* at 809 (discussing *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)).

*Grable*, on the other hand, supports the conclusion that, where state law provides only the procedural mechanism for the claim and "the only legal or factual issue contested in the case" is the interpretation of a federal statute, then federal question jurisdiction may exist. 545 U.S. at 315.

However, the *Grable* Court also described jurisdiction over state actions involving a contested and substantial federal question as subject to the possibility of a "veto" exercised to protect "congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id.* at 313-14.

The Court will first look to whether a federal issue is necessarily raised by the state law claims in Plaintiffs' complaint. A federal issue is necessarily raised if there are no alternative bases for the requested relief that involve no analysis of federal law. *Navistar Int'l Corp. v. Deloitte & Touche LLP*, 837 F. Supp. 2d 926, 932 (N.D. Ill. 2011) (citing *Grable*, 545 U.S. at 314; *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *Giles v. Chi. Drum, Inc.*, 631 F. Supp. 2d 981, 988 (N.D. Ill. 2009)). In their complaint, Plaintiffs argue that each contested ordinance violates Indiana Code §§ 5-2-18.2-3, -4, and -7, and in their prayer for relief, Plaintiffs ask the Court to find that Defendants, in enacting each ordinance, violated code "section 3 *or* 4." (Compl. 40-41, ECF No. 8 (emphasis added)).

Indiana Code § 5-2-18.2-4 plainly points to federal law. It provides: "A governmental body or a postsecondary educational institution may not limit or restrict the enforcement of federal immigration laws to less than the full extent permitted by federal law." However, Plaintiffs seek, alternatively to finding code section 4 violations, findings that the ordinances were enacted in violation of code section 3, which prohibits restricting citizenship and immigration status information, including restrictions on communicating or cooperating with federal officials, communicating information with the United States Department of Homeland Security, maintaining information, and exchanging information with another federal, state, or local government entity.

Defendants argue that a decision based on section 3 also necessarily raises a federal issue because the language in section 3 is substantially similar to language in 8 U.S.C. § 1373, and, thus, interpreting section 3 will require interpretation of § 1373. In other words, the asserted federal issue is the interpretation of § 1373. Plaintiffs counter that deciding whether the ordinances violate section 3 can be done by interpreting state law only, and to the extent that federal law informs that decision, such use of federal law is not a federal issue as required for federal jurisdiction.

Defendants assert that Plaintiffs have argued in this case that chapter 18.2 of Indiana's Code must be interpreted identically with § 1373. *See* (Defs.' Resp 11, ECF No. 35 (citing Pls.' Summary J. Mem. 21[1], ECF No. 11-1)). However, Plaintiffs' argument is slightly more nuanced: they argue that chapter 18.2 must be interpreted in line with what the Indiana legislature would have understood § 1373 to mean when they borrowed its language. *See* (Pls.' Mem. Supp. Remand 13, n. 10, ECF No. 17-1 (citing Pls.' Summary J. Mem. 18-21, ECF No. 11-1)).

Before the deciding court reaches any matter regarding § 1373, it must first interpret section 3, and interpretation of section 3 is a matter of state law. *See Chi. Tribune Co. v. Bd. of Trs. of Univ. of Ill.*, 680 F.3d 1001, 1004 (7th Cir. 2012). It is not a foregone conclusion that section 3 will be interpreted as adopting § 1373 jurisprudence; the deciding court may accept Plaintiffs' view that the state legislature's interpretation of § 1373 controls. *Cf. id.* at 1004-05 (finding that a question of state law interpretation was in issue that might be decided in a way that would foreclose the purported federal issue). It is not enough for a case to pertain to an area of law—such as immigration and national citizenship—that is largely governed by federal laws and regulations. *Bennet v. Sw. Airlines Co.*, 484 F.3d 907, 909 (7th Cir. 2007) (finding that that "the dominant role that federal law plays in air transport" does not create federal question jurisdiction).

---

[1] The Court uses the page number assigned by the CM/ECF system. The page number assigned by Plaintiffs' number is page 11.

Thus, as in *Chicago Tribune*, it is possible that this case will not be decided on the federal issue. If the decision is made on code section 3 (not section 4) and the deciding court adopts Plaintiffs' position, then it will be deciding what the Indiana legislature understood the language borrowed from federal statute to mean and not deciding the actual meaning of the federal statute. Such a finding would not, itself, be a finding on the meaning of the federal statute. Therefore, the Court determines that the federal issue is not necessarily raised and that this case does not arise under federal law.

The federal issue, though not necessarily raised, is actually disputed. The parties have different interpretations of the metes and bounds of federally required cooperation by local governments regarding immigration status and citizenship matters.

Under *Grable*, a court determines whether a federal issue is substantial by looking at "the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 568 U.S. 251, 260 (2013). The interpretation of § 1373 is a matter of federal concern, and the question here is heavily legal (as opposed to factual). However, as in *Empire Healthchoice* and unlike *Grable*, the claim was not triggered by the action of a federal agency. *See Empire Healthchoice*, 547 U.S. at 700. The "bottom-line practical issue" is whether the East Chicago ordinances violate state law (albeit state law that appears to borrow language from federal statute), not whether a federal agency acted compatibly with federal statute. *Id.* Here, no federal forum is needed for the federal government to "vindicate its own administrative action," though, like the tax law in *Grable*, federal judges are presumably more familiar with immigration law than state court judges are. *Grable*, 545 U.S. at 315. Given the Court's pronouncements that only a "special," "small," and "slim" category of cases fall under *Grable*, *see Empire Healthchoice* 547 U.S. at 699, 701, the Court finds that the federal issue falls short of being substantial, though not by a large margin.

Next, the Court turns to the balance between the state and federal judiciaries. Here, Defendants admit that resolving Plaintiffs' claims will require the deciding court to interpret Indiana Code chapter 5-2-18.2. (Defs.' Opp'n 6, ECF No. 35). Plaintiffs and Defendants each proffer different interpretations of this code chapter. This is not a case, like *Grable*, where state law provides only the procedural mechanism for the case to be brought and the only matter to be decided is a question of interpretation of federal law; state law is substantively in issue in Plaintiffs' claims. This case requires the interpretation of state statutes in addition to possible interpretation of federal law. This case is more akin to *Merrell Dow* than it is to *Grable*.

Further, as the Court found above, Plaintiffs do not have standing to bring their claims in federal court. Accordingly, if removal is permitted, only the State's claims could continue, and Plaintiff's claims would be severed and remanded. *See* 28 U.S.C. § 1441(c)(2). This would leave a situation where the State of Indiana—which intervened to argue for a constitutional reading of chapter 18.2 as Plaintiffs' claims were being judicially resolved—would not have a voice in Plaintiffs' suit, which would continue, without the State of Indiana, on remand in state court. As a matter of policy, the Court is hard put to decide that such a split of intertwined claims would be in accordance with congressional judgment about the division of labor between state and federal courts, but due to the lack of a necessary and substantial federal issue, the Court need not determine whether it would be proper to use the Court's "veto" in this case.

### C. Attorney Fees

Plaintiffs request an award of costs and expenses, to include attorney fees, pursuant to 28 U.S.C. 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent unusual circumstances (which the Court does not find to be present here), Plaintiffs are

entitled to a § 1447(c) award only if Defendants "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Defendants assert that such an award is improper because any colorable argument in favor of removal is enough to preclude a § 1447(c) award. Pursuant to *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 652 (7th Cir. 2014), an award is proper when "there was no objectively reasonable basis for federal jurisdiction or for removal." Though Defendants have not prevailed, the Court cannot say that the standard for an award is met. Therefore, the Court will not award attorney fees.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Motion to Remand [DE 17] and State of Indiana's Motion to Remand [DE 31] and **REMANDS** this case to Lake County Superior Court. The Court **DECLINES** to make an award or attorney fees under 28 U.S.C. § 1447(c).

SO ORDERED on May 27, 2020.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT

15